FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 21, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KIMBERLY B.,[1]

          Plaintiff,

   v.

FRANK BISIGNANO,
Commissioner of Social Security,

          Defendant.

No.    4:26-cv-9-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Kimberly B. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits because the crafted residual functional capacity (RFC) failed to consider the impact of Plaintiff's obesity. The Commissioner opposes the request,

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

contending the ALJ reasonably evaluated Plaintiff's obesity, symptom reports, and RFC. Because the ALJ's findings regarding obesity conflict with each other, this matter is remanded for further proceedings—the ALJ must evaluate the impact of Plaintiff's obesity on her functional abilities.

## I.    Background

At 44 years old, Plaintiff filed a Title 16 application for benefits based on Type II diabetes, loss of eyesight due to diabetes, asthma with lung complications, obesity, learning disability, spinal stenosis, and retinopathy.[2] Plaintiff appeared for a hearing before ALJ James Carberry in December 2024, at which Plaintiff and a vocational expert testified.[3] Plaintiff, who is 5 foot 3 inches tall and morbidly obese,[4]

---

[2] Administrative Record (AR) 168–76. The December 9, 2022 application filing date starts the relevant period for a Title 16 claim. 20 C.F.R. § 416.335.

[3] AR 53–72.

[4] *See* AR 340 (Dec. 2022: 282 pounds), AR 943 (June 2023: 267 pounds), AR 1182 (Jan. 2024: 276 pounds), AR 1584 (June 2024: 278 pounds).

DISPOSITIVE ORDER - 2

testified that she has poor vision and has tried to lose weight but her low back issues interfere with her weight-loss efforts.[5] On her function reports, she listed that her back pain affects her ability to sleep, walk, and sit, and she requires additional time to get her chores done.[6]

The ALJ issued a decision finding Plaintiff not disabled.[7] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence," and the ALJ likewise found regarding Plaintiff's mother's statement.[8] As to the medical opinions, the ALJ found:

---

[5] AR 61–66. Plaintiff's arguments focus on her exertional abilities. Therefore, the Court's summary and analysis focus on the physical-health impairments, symptom reports, and medical opinions.

[6] AR 251–75.

[7] AR 14–34. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[8] AR 22. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

DISPOSITIVE ORDER - 3

- the State agency medical consultant's reconsideration-level opinion that Plaintiff could perform light work with postural and environmental limitations "generally persuasive."

- the examining opinions of Todd Carpenter, FNP-C, that Plaintiff could perform less than light work unpersuasive.

- the State agency medical consultant's initial-level opinion that Plaintiff could perform medium work unpersuasive.[9]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since December 9, 2022, the application date.

- Step two: Plaintiff had the severe impairments of diabetes, asthma, obesity, spinal stenosis, learning disorder, depressive disorder, hyperlipidemia, hypertension, retinopathy, post-traumatic stress disorder, and borderline intellectual functioning.

---

[9] AR 26–27.

DISPOSITIVE ORDER - 4

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff could perform light work except:

  [She can l]ift, carry, push and pull 20 pounds occasionally, 10 pounds frequently; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; frequently engage in handling and fingering; no exposure to unprotected heights or dangerous machinery; no operation of motor vehicles; no concentrated exposure to dust, fumes and respiratory irritants; perform simple routine tasks, occasional interactions to coworkers and supervisors; no teamwork or close collaboration with others; no interactions with the general public; no reading of fine print or working with objects smaller than a quarter.

- Step four: Plaintiff had no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cleaner housekeeping, garment sorter, and routing clerk.[10]

---

[10] AR 17–29.

DISPOSITIVE ORDER - 5

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[11] Plaintiff now appeals to district court.[12]

## II.    Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[13] The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[14] and such error impacted the nondisability determination.[15] Substantial evidence is "more than a

---

[11] AR 1–6.

[12] ECF No. 1.

[13] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

DISPOSITIVE ORDER - 6

mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

### III.  Analysis

Plaintiff argues the ALJ erred by failing to consider the impact that obesity has on her spinal stenosis and therefore the ALJ erred when evaluating Plaintiff's symptom reports and crafting the RFC. The Commissioner argues that Plaintiff's challenges are without merit because the ALJ reasonably evaluated Plaintiff's subjective allegations, including the impact of her obesity, and the ALJ proceeded past step

---

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 7

two. As is explained below, the ALJ's conflicting findings as to Plaintiff's obesity and failure to meaningfully discuss how obesity interplayed with her other impairments results in a decision that is not supported by substantial evidence.

At step two, the ALJ listed that Plaintiff has the severe impairment of obesity, amongst other severe impairments, stating, "[t]he above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR [(Social Security Ruling)] 85-28."[17]

But later in the decision, the ALJ contradicted this step-two finding. When discussing Plaintiff's "history of obesity," the ALJ wrote:

> The undersigned has considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling 19-2p. However, there is no evidence of any specific or quantifiable impact on functioning. Therefore, the claimant's obesity is **not a severe impairment**. The claimant's weight, including the impact on her ability to ambulate as well as her other body systems, has been considered within the limitations of the claimant's residual functional capacity determined herein.[18]

---

[17] AR 20. *See* 20 C.F.R. § 416.920(a), (c).

[18] AR 24 (emphasis added).

DISPOSITIVE ORDER - 8

This language directly contradicts the ALJ's finding at step two, and the ALJ did not resolve this conflict.

Even if the Court considers the ALJ's obesity severe-impairment finding at step two to be a scrivener's error, the remainder of the ALJ's RFC analysis does not allow the Court to understand how the ALJ considered Plaintiff's obesity when crafting the RFC as is required by SSR 19-2p. SSR 19-2p recognizes that obesity is often associated with musculoskeletal, respiratory, cardiovascular, and endocrine disorders; that it "increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities"; that the claimant "may have limitations in the ability to sustain a function over time"; and that "someone who has obesity and arthritis affecting a weight-bearing joint may have more pain and functional limitations than the person would have due to arthritis alone."[19]

---

[19] SSR 19-2p: Titles II and XVI: Evaluating Cases Involving Obesity. *See also Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) (SSRs

DISPOSITIVE ORDER - 9

Instead of meaningfully discussing how he considered Plaintiff's obesity in conjunction with Plaintiff's musculoskeletal, respiratory, and cardiovascular disorders, the ALJ does not mention obesity when discussing Plaintiff's other severe impairments. For instance, when discussing Plaintiff's stenosis, the ALJ stated:

> Overall, the record shows that the claimant's [sic] demonstrates conservative primary care treatment [for her lumbar stenosis], without evidence of significant changes in objective medical findings or more aggressive treatment recommendations. Any reported limitations stemming from the claimant's back impairments are accommodated in the above residual functional capacity, including reduced light work with no climbing ladders, ropes or scaffolds, occasionally climbing ramps and stairs and occasionally postural activities.[20]

This analysis indicates that Plaintiff's light-work RFC with postural limitations was based solely on Plaintiff's stenosis without any consideration for whether Plaintiff's obesity further limited Plaintiff. Similarly, the ALJ's discussion about Plaintiff's asthma and

---

"do not carry the force of law, but they are binding on ALJ's nonetheless." (cleaned up)).

[20] AR 23.

hypertension does not discuss what impact, if any, Plaintiff's obesity has on her respiratory and cardiovascular impairments.

Moreover, the ALJ's analysis downplays Plaintiff's stenosis. For instance, after the reconsideration-level medical consultant's review, a June 2024 MRI of the lumbar spine revealed:

- Multilevel degenerative changes of the lumbar spine, most pronounced at L3–L4 and L4–L5 where there is moderate spinal canal stenosis.

- Moderate bilateral lateral recess narrowing at L4–L5 with likely abutment of the descending L5 nerve roots.

- Mild-to-moderate right neural foraminal narrowing at T11–T12 and mild-to-moderate bilateral neural foraminal narrowing at L4-L5.

- Mild-to-moderate spinal canal stenosis at T12–L1 with mild crowding of the anterior conus and proximal cauda equina.[21]

Instead of discussing this MRI imaging, or the MRI imaging of the lumbar spine in 2021, which also revealed disorders at T11-12, T12–L1, L3–L4, and L4–L5,[22] the ALJ focused on the lumbar spine x-ray from 2023, which "revealed mild degenerative changes in the lower thoracic

---

[21] AR 1914–15.

[22] AR 1030.

spine and no acute bony abnormality."[23] By relying solely on the lumbar x-ray and not the MRIs, the ALJ downplayed Plaintiff's stenosis. This contributed to the ALJ finding ARNP Carpenter's sedentary-work (or less than) opinions[24] unsupported.

Plus, although not all medical records need to be discussed, the June 2024 exercise stress test is relevant evidence regarding the interplay between Plaintiff's back disorders, obesity, respiratory, and cardiovascular impairments.[25] During the 4-minute exercise stress test, Plaintiff had a hypertensive response, which was noted to be an

---

[23] AR 23 (citing AR 928).

[24] AR 943–54, 1584–92.

[25] *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness . . . , he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

DISPOSITIVE ORDER - 12

adverse predictor.[26] The ALJ did not discuss this testing, nor were the test results or the June 2021 MRI reviewed by the State agency medical consultant on reconsideration-review.[27]

Additionally, the ALJ's finding that Dr. Carpenter's opinions were unpersuasive because "[t]he claimant underwent physical therapy sessions but ultimately stopped treatments" is not supported by substantial evidence.[28] Similarly, as was mentioned above, the ALJ

---

[26] AR 1916. *See also* AR 1882–89 (July 2024: dyspneic respiratory effort, diminished air movement, inspiratory wheezing, abnormal motor strength, low back pain, limited range of motion due to low back pain, and tenderness in lumbar region); AR 1812–21 (Oct. 2024: limited range of motion due to low back pain, tenderness in lumbar region, and abnormal motor strength due to low back pain).

[27] *See* AR 105–21 (listing reviewed evidence by Robert Caspair, MD, on July 12, 2024); AR 1798 (sending medical records from June 1, 2024, to October 16, 2024, at a date on or after October 18, 2024, given date listed on AR 1925).

[28] AR 27.

discounted Plaintiff's reported back pain symptoms because she "demonstrates conservative primary care treatment, without evidence of significant changes in objective findings or more aggressive treatment recommendations."[29] These findings unfairly overlook the physical therapist's statement that Plaintiff "did show a small improvement in spinal [range of motion], but without concurrent pain relief, this is not enough to justify continuing conservative intervention. No additional visits scheduled. Patient referred back to primary physician for additional assessment and further consultation."[30] Thereafter, Plaintiff had the June 2024 MRI, which showed progression of her spinal impairments from the prior March 2021 MRI. Substantial evidence does not support the ALJ's findings discounting either Plaintiff's reported back symptoms or Dr. Carpenter's opinions related to Plaintiff's cessation of physical therapy and course of treatment.

---

[29] AR 23.

[30] AR 1016.

DISPOSITIVE ORDER - 14

On this record, the ALJ's generic statement that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" fails to meaningfully discuss the impact of Plaintiff's obesity on her exertional abilities.[31] The ALJ's lack of analysis regarding Plaintiff's obesity frustrates meaningful review.

Remand for development of the medical record, including an updated consultative physical examination, and a new sequential disability evaluation by the ALJ, which meaningfully explains the ALJ's findings, including the impact of Plaintiff's obesity on her other impairments, is ordered. When evaluating the medical evidence and Plaintiff's symptoms, the ALJ is to consider that "[n]ormal results of strength, gait, and range of motion tests, without more, do not contradict diagnoses based on pain where the results do not indicate whether the test accounted for the relevant pain."[32]

---

[31] AR 22.

[32] *Ortiz v. Bisignano*, 179 F.4th 691, 699 (9th Cir. 2026).

DISPOSITIVE ORDER - 15

## IV.    Conclusion

Plaintiff established the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 13 and 14**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 21st day of July 2026.

_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 16